UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EVANGELENE PEACK,

      Plaintiff,

v.                         Case No. 8:15-cv-2859-T-33JSS

POLK COUNTY SHERIFF'S OFFICE,

      Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant
Polk County Sheriff's Office's Motion for Summary Judgment
(Doc. # 48), filed on November 15, 2016. Pro se Plaintiff
Evangelene Peack filed a response on January 12, 2017. (Doc.
# 53). For the reasons that follow, the Motion is granted.

**I.**   **Background**

     **A.**   **Employment with the Sheriff's Office**

The Sheriff's Office, led by Sheriff Grady Judd,
operates throughout the unincorporated areas of Polk County,
Florida. (Fulse Decl. Doc. # 49-2 at ¶ 3). Additionally, the
Sheriff's Office operates two jails: the South County Jail
and the Central County Jail. (Id.).

1

Peack was born in Trinidad and Tobago, and considers her national origin to be Trinidadian. (Peack Dep. Doc. # 49-5 at 27:13-17). She became a United States citizen around 2005, and identifies as Christian. (Id. at 31:10-22; 43:3-6). Peack was hired by the Sheriff's Office in April of 2011, for a position in the Telecommunications Unit. (Fulse Decl. Doc. # 49-2 at ¶ 4). In July of 2011, Peack transferred to the position of Detention Support Specialist (DSS), which is a civilian, unsworn position. (Id.; Marcum Decl. Doc. # 49-3 at ¶ 3). As a DSS, Peack had "operational, clerical and public relations duties" within the County's jails: DSS's "operate security doors, handle inmate property, monitor movement of visitors, monitor inmate activity, provide information to the public, assist other Detention members, maintain office logs, and document visitors." (Marcum Decl. Doc. # 49-3 at ¶ 3). Peack also received some training to become a Victim Advocate during this time. (Doc. # 55 at 15-23).

In May and June of 2013, Peack was working as a DSS in Central County Jail, and reported to Lts. Derwent Palmer or Todd Borders. (Marcum Decl. Doc. # 49-3 at ¶ 4). Lt. Borders was Peack's primary lieutenant but on days on which Lt. Borders was not working, Peack reported to Lt. Palmer. (Marcum Decl. Doc. # 49-3 at ¶ 4; Borders Decl. Doc. # 49-1 at ¶ 3).

Both lieutenants reported to Captain Kimberley Marcum, who reported to Major Michael Allen. (Marcum Decl. Doc. # 49-3 at ¶ 4).

The Sheriff's Office maintains "a written policy which encourages any [Sheriff's Office] employee who feels that he or she are the subject or victim of discrimination or harassment based upon a protected category, including race, color, religion and/or national origin to make a complaint with [the Sheriff's Office's] Human Resources Department." (Fulse Decl. Doc. # 49-2 at ¶ 8). Peack never filed a complaint with the Human Resources Department during her employment. (Peack Dep. Doc. # 49-5 at 111:8-17; Fulse Decl. Doc. # 49-2 at ¶ 8).

## B.  Scheduled Vacation

Peack was scheduled to take a three-week vacation starting June 6, 2013. (Marcum Decl. Doc. # 49-3 at ¶ 10; Peack Dep. Doc. # 49-5 at 49:5-22). Peack emailed Lts. Palmer and Borders on May 8, 2013, requesting to take three hours off work on June 4 and all day off on June 5, 2013, so that she could attend a class. (Palmer Decl. Doc. # 49-4 at ¶ 4, Ex. A; Borders Decl. Doc. # 49-1 at ¶ 4). This class, called "Victim Services Practitioner Designation," was given by the Office of the Attorney General in Orlando, Florida, from June

3

3 to June 7, 2013. (Marcum Decl. Doc. # 49-3 at ¶ 12; Peack Dep. Doc. # 49-5 at 146:3-6; 151:18-152:2; Ex. 3). In her email, Peack explained why she wished to take the class: "This certificate will build my self esteem and create hope in my life. It will positively affect my performance on my job." (Palmer Decl. Doc. # 49-4 at Ex. A).

On May 21, 2013, Peack again asked Lt. Borders about taking vacation time on June 4 and 5 to attend the class. (Borders Decl. Doc. # 49-1 at ¶ 4). Although she could not take June 4 off as vacation time, Lt. Borders told Peack that she could switch shifts with another DSS, if he or she agreed. (Id.). Regarding June 5, Lt. Borders explained to Peack that she would need to get approval from Lt. Palmer, as Peack would be reporting to Lt. Palmer that day. (Id.).

Lt. Palmer emailed Peack on May 31, 2013, and informed her that she could switch days with another DSS for June 5, if the other DSS agreed. (Palmer Decl. Doc. # 49-4 at ¶ 4, Ex. A; Peack Dep. Doc. # 49-5 at 156:11-13). The parties agree that Lt. Palmer also spoke to Peack on the telephone later on May 31, 2013. (Palmer Decl. Doc. # 49-4 at ¶ 4; Peack Dep. Doc. # 49-5 at 159:23-160:6). But the parties disagree regarding the content of the conversation. According to Lt. Palmer, he emphasized to Peack that she could not take June

4

Case 8:15-cv-02859-VMC-JSS   Document 56   Filed 02/02/17   Page 5 of 33 PageID 498


5 off unless another DSS agreed to switch days with her. (Palmer Decl. Doc. # 49-4 at ¶ 4). The Sheriff's Office also asserts that Lt. Palmer informed Peack that she had to consult with Lt. Borders regarding whether Peack could take off June 4. (Id.). On the contrary, Peack insists that Lt. Palmer told her that her vacation could begin on June 4. (Peack Dep. Doc. # 49-5 at 84:10-17).

> Q: So you're saying that somebody told you that you could take the 4th and 5th off and you didn't have any obligation to obtain coverage from another DSS?
> A: Absolutely. Derwent Palmer did indeed call me and tell me to go ahead and take those two days off at around 5:30 that – around 5:30 the last day I worked before I took those two days off.

(Id.). Lt. Palmer denies giving Peack permission to take June 4 or 5 off. (Palmer Decl. Doc. # 49-4 at ¶ 4).

Then, on June 3, 2013, Peack faxed a note to Lt. Borders stating that Lt. Palmer had allowed her to begin her vacation on June 4, 2013. (Borders Decl. Doc. # 49-1 at ¶ 5, Ex. A). The note states in part: "Lt. Palmer told me that I'm on vacation from June 4th for 3 weeks. I asked him if he can change it to 3 weeks from tommorow and he said he will see what he can do . . . ." (Id.). The note also stated that Peack had misplaced her cellular telephone so she would have to be reached on her home telephone. (Id.).

After attempts to reach Peack by telephone were unsuccessful, Lt. Borders emailed Peack at 6:02 PM on June 3, stating:

> We have not discussed your vacation. Lt. Palmer is not who you are assigned to. You need to contact me by phone. I do not conduct business via Fax or Email. You never discussed anything with me or confirmed any time off. I strongly urge you to contact me before you leave.

(Borders Decl. Doc. # 49-1 at ¶ 5, Ex. B). Peack states that she did not see this email until June 4, 2013, because she did not check her email account that night. (Peack Dep. Doc. # 49-5 at 167:12-16; 172:14-173:10).

### C.   **Events of June 4, 2013**

On June 4, 2013, Peack did not report to work at 6:00 AM as she was scheduled to do. (Borders Decl. Doc. # 49-1 at ¶ 6). Because Lt. Borders was unable to reach Peack by telephone, Capt. Marcum directed Lt. Borders to drive to Peack's home to contact her, where he left a note on the door after Peack failed to answer. (Marcum Decl. Doc. # 49-3 at ¶ 7).

Peack then called the jail and sent an email, saying that she would come to the jail when her son woke up. (Marcum Decl. Doc. # 49-3 at ¶ 7; Borders Decl. Doc. # 49-1 at ¶ 6). When Peack arrived at the jail with her young son, she spoke

with Capt. Marcum and Lt. Borders in a conference room where Peack explained that she thought she was on vacation that day and had attended the class in Orlando that morning. (Marcum Decl. Doc. # 49-3 at ¶¶ 8-9; Borders Decl. Doc. # 49-1 at ¶ 7; Peack Dep. Doc. # 49-5 at 152:25-153:2). According to Capt. Marcum and Lt. Borders, Peack at that time stated that she had not seen Lt. Borders's June 3 email because she could not open email on her home computer. (Marcum Decl. Doc. # 49-3 at ¶ 8; Borders Decl. Doc. # 49-1 at ¶ 7).

During the meeting, Peack asked if she could take time off the next day, June 5, to attend the remainder of the class in Orlando. (Marcum Decl. Doc. # 49-3 at ¶ 9; Borders Decl. Doc. # 49-1 at ¶ 7). Capt. Marcum emphasized to Peack that she had to switch shifts with another DSS if she wanted to take time off work on June 5. (Marcum Decl. Doc. # 49-3 at ¶ 9; Borders Decl. Doc. # 49-1 at ¶ 7). Additionally, Peack was ordered to obtain a telephone number on which she could be reliably reached, to contact Lt. Palmer immediately regarding switching shifts with another DSS on June 5, and to submit a report about her absence from work on June 4. (Marcum Decl. Doc. # 49-3 at ¶ 9; Borders Decl. Doc. # 49-1 at ¶ 7).

Peack's son was seated outside the conference room, where he heard the entirety of the meeting and became upset.

7

(Peack Dep. Doc. # 49-5 at 181:21-182:15). Peack too was deeply upset by the conversation with Capt. Marcum and Lt. Borders, and felt physically ill as a result. (Id. at 185:9-17). She immediately travelled to a clinic to see her doctor. (Id.). Later that night, Peack faxed the doctor's note she had obtained from "Doctor Today Urgent Care, LLC" to the jail, which stated that Peack should be excused from work until June 6, 2013 — the first day of her scheduled vacation. (Marcum Decl. Doc. # 49-3 at ¶ 10, Palmer Decl. Doc. # 49-4 at ¶ 5, Ex. B).

## D.  Events of June 5, 2013

Yet, at 5:45 AM on June 5, Peack reported to work in uniform. (Marcum Decl. Doc. # 49-3 at ¶10; Palmer Decl. Doc. # 49-4 at ¶ 6). Lt. Palmer asked Peack if she was able to work, and Peack informed him that "she was supposed to be taking a prescription but was too ill to pick up the medicine the previous day" and "was experiencing migraine headaches and possible vertigo." (Palmer Decl. Doc. # 49-4 at ¶ 6). Lt. Palmer told Peack that she could not stay at work because of the doctor's note and Peack's statements about her condition but that "if she was not sick and could work, she would need to obtain an updated doctor's note allowing her to return to work." (Id. at ¶ 7). According to Lt. Palmer, he "instructed

8

her to call [him] and let [him] know if she was able to get such a note," but Peack never called. (Id.). Peack understood Lt. Palmer's instruction as an option:

> Lt. Palmer says, "If you feel well enough to work today, go to your doctor and get a clearance." He gave it as an option. . . . Because he gave me that option — it was optional — I didn't do what he told me to do because I could either do that or disregard it and go home.

(Peack Dep. Doc. # 49-5 at 199:11-19).

Although multiple calls were made to Peack that day, she did not respond. (Id.). The Sheriff's Office then sent "a deputy sheriff to [Peack's] house in an attempt to make contact with her, but no one was at her home" at 2:30 PM. (Id.; Marcum Decl. Doc. # 49-3 at ¶ 11). The Sheriff's Office maintains a policy that "deputies that are out sick are to remain home (or at any place of treatment)." (Marcum Decl. Doc. # 49-3 at ¶ 11). But, Peack was a DSS — not a deputy — so the applicability of that policy to Peack is unclear.

At 3:30 PM on June 5, Capt. Marcum called Donna Burch who was teaching the class in Orlando. (Marcum Decl. Doc. # 49-3 at ¶ 12). Burch confirmed that Peack had attended the class "on the morning of June 4, 2013 and had been present since 8:00 AM that morning" of June 5, 2013. (Id.).

### E.    Investigation

Thereafter, Capt. Marcum initiated an investigation of Peack's conduct. Lts. Borders and Palmer provided Capt. Marcum with memoranda recounting their versions of the events. (Marcum Decl. Doc. # 49-3 at ¶ 15). In his memorandum to Captain Marcum, Lt. Borders recommended finding that Peack "violated General Order 26.1.E.10.ll (Untruthfulness) and General Order 26.1.E.10.rr (Conduct Unbecoming a Member of the Sheriff's Office) by deliberately omitting information and misleading her supervisors." (Borders Decl. Doc. # 49-1 at ¶ 10). Lt. Borders recommended that Peack's employment be terminated. (Id.). Similarly, Lt. Palmer recommended in his memorandum that "Peack be terminated for violating General Order 26.1.E.10.ll (Untruthfulness)" after concluding that "Peack had been untruthful with me about her ability to perform her work duties on June 5, 2013 and that the purpose of her dishonesty was to attend a certification class in Orlando." (Palmer Decl. Doc. # 49-4 at ¶ 8, Ex. C).

Peack also submitted a memorandum, which in Capt. Marcum's opinion "differed from the solid verifiable evidence as to what [Peack] was told and when" and in which Peack "gave conflicting information when questioned about her absences."

(Marcum Decl. Doc. # 49-3 at ¶ 15, Ex. F). In her memorandum,

Peack states:

> The reason that I was absent on the 4th of June
> 2013 was because to the best of my knowledge and
> belief, I thought that I was on vacation. I had
> spoken to Lt. Palmer the Friday before the 4th of
> June 2013 and thought I heard Lt. Palmer say that
> my vacation was starting on the 4th of June for
> three weeks. I honestly thought that I had
> vacation. I now believe that I may have
> misunderstood what I heard or did not correctly
> hear what I thought I heard. At the time I thought
> I was sure about what I heard.

(Marcum Decl. Doc. # 49-3 at Ex. F).

During her investigation, Capt. Marcum also reviewed

Peack's disciplinary record and found that Peack had been

disciplined previously for attendance issues, including a

suspension without pay. (Marcum Decl. Doc. # 49-3 at ¶ 16;

Borders Decl. Doc. # 49-1 at ¶ 10).

After reviewing the evidence and memoranda, Capt. Marcum

prepared a memorandum to Major Allen, in which she recommended

that Peack be terminated from her position with the Sheriff's

Office. (Marcum Decl. Doc. # 49-3 at ¶ 16-18, Ex. G). Capt.

Marcum's recommendation was approved and Peack was terminated

on July 19, 2013. (Marcum Decl. Doc. # 49-3 at ¶ 18; Fulse

Decl. Doc. # 49-2 at ¶ 5).

During her deposition, Peack stated: "I know of other

people in similar situations like me that were not

terminated." (Peack Dep. Doc. # 49-5 at 207:1-2). When asked to identify those individuals, Peack could not identify anyone but stated that she had requested that information from the Sheriff's Office and "will present in court that I did request it." (Id. at 207:21-22). But, as shown by the Sheriff's Office, in the five years before Peack's termination, every employee who was found to have violated the untruthfulness policy was terminated. (False Decl. Doc. # 49-2 at ¶ 6). A total of thirty-four employees were terminated: twenty-two men and nine women. (Id.). Of the thirty-four employees, "22 were white, 7 were African-American, 4 were Hispanic and one was Indian." (Id.). The Sheriff's Office does not track the religious affiliations of its employees. (Id.).

After Peack was denied unemployment benefits following her termination, Peack appealed that decision within the Florida Department of Economic Opportunity. (Doc. # 55 at 3-7). The issue involved was "[w]hether the claimant was discharged for misconduct connected with work or voluntarily left work without good cause," because benefits could only be denied to Peack if the Sheriff's Office established that Peack's employment ended for one of those reasons. (Id. at 4). The appeals referee reversed the denial of her benefits

after finding that the Sheriff's Office had not met its burden of proving that Peack was dismissed for misconduct by a preponderance of the evidence. (Id. at 5). The appeals referee found Peack's testimony of the events surrounding her termination to be "more credible" than that provided by her supervisors. (Id.).

**F.   Procedural History**

After Peack filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging race, religion, and national origin discrimination and retaliation, the EEOC issued Peack a right to sue letter on September 10, 2015. (Doc. # 48 at 13; Doc. # 55 at 8). Then, Peack, proceeding pro se, filed her Complaint in this Court on December 12, 2015. (Doc. # 1). Subsequently, Peack filed an Amended Complaint on February 1, 2016. (Doc. # 17). The Court dismissed the Amended Complaint without prejudice, and Peack filed her Second Amended Complaint on May 12, 2016. (Doc. # 36). On May 26, 2016, the Sheriff's Office filed its Answer. (Doc. # 37).

At the Court's direction, the parties mediated on October 18, 2016, but met an impasse. (Doc. ## 29, 44). Also on October 18, 2016, Peack moved for an extension of time to complete discovery, but that motion was denied because the

discovery deadline had already passed. (Doc. ## 46-47). Then, on November 15, 2016, the Sheriff's Office filed its Motion for Summary Judgment. (Doc. # 48). Peack responded on January 12, 2017, (Doc. # 53). The Sheriff did not file a reply. The Motion is ripe for review.

## II.  Legal Standard

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are

no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his

conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### III. Analysis

#### A. Disparate Treatment Claim

Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish her Title VII claim with either direct or circumstantial evidence of discrimination. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)(citing Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999)).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." Tippie v. Spacelabs Med., Inc., 180 F. App'x 51, 54 (11th Cir. 2006)(quoting Bass v. Bd. of

Cty. Comm'rs, Orange Cty., Fla., 256 F.3d 1095, 1105 (11th Cir. 2001)). Peack presents no direct or statistical evidence of discrimination. Thus, Peack's case is limited to circumstantial evidence.

In analyzing allegations supported by circumstantial evidence under Title VII, the Court follows the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. See Marcelin v. Eckerd Corp. of Florida, No. 8:04-cv-491-T-17MAP, 2006 WL 923745, at *4 (M.D. Fla. Apr. 10, 2006)(citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. McDonnell Douglas, 411 U.S. at 802-03. Once the plaintiff has established a prima facie case, the burden of proof shifts to the defendant. Id.; Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006).

To rebut the presumption of discrimination created by the plaintiff's prima facie case, the defendant must provide "legitimate, nondiscriminatory reason[s]" for the employment action taken against the plaintiff. Burdine, 450 U.S. at 254; Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th

Cir. 1998). However, "[t]his is a burden of production, not persuasion." Standard, 161 F.3d at 1331. A defendant "must merely produce evidence that could allow a rational fact finder to conclude" its actions were not motivated by discriminatory animus. Id.

If the defendant produces such evidence, the burden shifts again to the plaintiff. McDonnell Douglas, 411 U.S. at 802-03. The plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing [his] prima facie case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

In the instant case, Peack has failed to establish a prima facie case but, assuming she had, she failed to carry her burden of showing the Sheriff's Office's proffered non-discriminatory reason was pretextual.[1]

---

[1] The Sheriff's Office argues that summary judgment should be granted on the basis of its requests for admission, to which Peack did not timely respond, and therefore admitted. See Fed. R. Civ. P. 36(a)(3)("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). But, while the Sheriff's Office lists a

### 1. __Prima Facie Case__

In order to establish a prima facie case of disparate treatment, Peack must demonstrate that she: "(1) belongs to a protected class; (2) suffered an adverse employment action; (3) was qualified to do her job; and (4) was treated less favorably than similarly situated employees outside of the protected class." Martin v. Rumsfeld, 137 F. App'x 324, 325 (11th Cir. 2005); see also Wilson, 376 F.3d at 1087.

The Sheriff's Office does not argue that Peack was unqualified for her job as DSS. Additionally, it is undisputed that Peack belongs to a protected class for her race and national origin. (Doc. # 48 at 13). The parties dispute, however, whether Peack is a member of a protected class regarding her religion — she identifies as Christian. (Id. at 13 n.5; Peack Dep. Doc. # 49-5 at 43:3-6). Regardless, Peack has not identified any similarly situated employees outside of any of the three protected classes.

"When determining whether employees are similarly situated for the purposes of establishing a prima facie case

---

sampling of the requests for admission in its Motion, (Doc. # 48 at 11), the requests for admission themselves are not attached to the Motion. As the Court cannot review the requests for admission, summary judgment will not be granted on that basis.

of discrimination, we must consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." <u>Castillo v. Roche Labs., Inc.</u>, No. 11–12219, 2012 WL 1648873, at *2 (11th Cir. May 11, 2012). "The quantity and quality of the comparator's misconduct must be 'nearly identical' to the plaintiff's misconduct, in order 'to prevent courts from second-guessing employers' reasonable decisions.'" <u>Rose v. Wal-Mart Stores E., Inc.</u>, 631 F. App'x 796, 799 (11th Cir. 2015)(quoting <u>Burke-Fowler v. Orange Cty., Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006)).

The Court finds no evidence of a similarly situated employee whom the Sheriff's Office treated differently than Peack. Peack has not presented evidence of an employee who was found to have violated the Sheriff's Office's untruthfulness policy but who was not terminated. Indeed, Peack has presented no evidence to refute the Sheriff's Office's evidence that all employees found to have violated the policy in the five years before Peack's termination — thirty-four employees in total — were all terminated. (Fulse Decl. Doc. # 49-2 at ¶ 6). Nor has Peack presented evidence of employees who engaged in similar conduct — missing work without permission — but who were not investigated for

dishonesty or disciplined because they belonged to a different race, religion, or national origin.

Throughout her response, Peak states that evidence controverting the version of events recounted by the Sheriff's Office "can be presented as evidence." (Doc. # 53 at ¶ 15, 19-20, 24-25). But a non-moving party's response to a summary judgment motion is her opportunity to present evidence that contradicts that provided by the moving party. See Jeffery, 64 F.3d at 593-94 (noting that the non-moving party must 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial" to survive summary judgment); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has . . ." (citation and internal quotation marks omitted)). A motion for summary judgment otherwise establishing that no genuine issue of material fact exists should not be denied merely because the non-moving party alleges unpresented contradictory evidence could later be acquired for trial.

Furthermore, the Court notes that Peack would not be able to acquire new evidence to present at trial because discovery closed on October 14, 2016, and the Court denied Peack's motion to extend the discovery deadline, which she filed on October 18, 2016. (Doc. ## 46-47); see also Ashmore v. Sec'y, Dep't of Transp., 503 F. App'x 683, 686 (11th Cir. 2013)(concluding district court did not abuse its discretion by (1) denying motion to extend discovery deadline and (2) denying motion to reopen discovery where party filed motion one day before discovery closed, no discovery was outstanding, and party had delayed even beginning the discovery process).

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Because Peack has failed to identify a similarly situated employee or other evidence of discrimination, she has failed to establish her prima facie case of disparate treatment and summary judgment is appropriate on this claim.

## 2.   Legitimate Non-Discriminatory Reason

Even if Peack had established her prima facie case, the Sheriff's Office contends that it had a legitimate, non-

22

discriminatory reason for firing Peack: her failure to report for duty on June 4 and 5, 2013, and the finding of Peack's supervisors that she violated the untruthfulness policy.

The Sheriff's Office's burden of rebuttal is "exceedingly light," and it "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." Weston-Brown v. Bank of Am. Corp., 167 F. App'x 76, 80 (11th Cir. 2006)(quoting Cooper v. S. Co., 390 F.3d 695, 725 (11th Cir. 2004)). "The reason offered by an employer for an action does not have to be a reason that the judge or jurors would act on or approve. Instead, all that matters is that the employer advance an explanation for its action that is not discriminatory in nature." Schoenfeld, 168 F.3d at 1269 (internal citation and quotations omitted).

The Sheriff's Office has presented evidence to establish the existence of its legitimate non-discriminatory reason for terminating Peack; namely, the declarations of Peack's supervisors and the reports drafted by those supervisors finding that Peack had been untruthful about her absences in violation of the Sheriff's Office's policy. (Borders Decl. Doc. # 49-1 ¶ 10; Marcum Decl. Doc. # 49-3 at ¶ 17; Palmer Decl. Doc. # 49-4 at ¶ 8). Additionally, Peack had a

23

disciplinary record for poor attendance. (Marcum Decl. Doc. # 49-3 at ¶ 16; Borders Decl. Doc. # 49-1 at ¶ 10). "Poor job performance — including excessive absences or late arrivals — is a legitimate, non-discriminatory reason for adverse employment action." Penaloza v. Target Corp., No. 8:11-cv-2656-T-33AEP, 2012 WL 6721011, at *10 (M.D. Fla. Dec. 27, 2012)(citations omitted).

Peack asserted in her deposition that Lt. Palmer told her on May 31, 2013, that she could take June 4 and 5, 2013, off as vacation in order to sabotage her. (Peack Dep. Doc. # 49-5 at 84:10-17). Even taking as true that Lt. Palmer, motivated by discriminatory animus, told Peack over the telephone on May 31, that she could take June 4 and 5 off, the Sheriff's Office has still presented a legitimate, non-discriminatory reason for her termination. Indeed, Peack's absence from work on June 4 was not the only incident of perceived untruthfulness on which Peack's supervisors based their decision to fire her, but only her absence on June 4 could be attributed to Lt. Palmer's telephone call. Capt. Marcum and Lt. Borders called Peack in for a meeting on June 4 during which they explained that Peack was not on vacation and could not take June 5 off work unless she switched shifts with another DSS. (Marcum Decl. Doc. # 49-3 at ¶ 9; Borders

Decl. Doc. # 49-1 at ¶ 7). Capt. Marcum concluded that Peack's subsequent use of a doctor's note to excuse herself from work on June 5 was untruthful because Peack then attended the class in Orlando that day. (Marcum Decl. Doc. # 49-3 at ¶ 17).

### 3.  **Pretext**

Even if Peack's failure to appear at work on June 4 and 5 was the result of an honest misunderstanding of her supervisors' orders, Peack has still failed to establish that the investigation in which her supervisors determined she had been dishonest was a pretext for discrimination.

"A legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination." Worley v. City of Lilburn, 408 F. App'x 248, 251 (11th Cir. 2011)(citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must meet it 'head on and rebut it.'" Id. (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).

"An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." Damon v. Fleming

<u>Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1363 (11th Cir.

1999). As the Eleventh Circuit has explained:

> [I]n carrying out its business and in making
> business decisions (including personnel
> decisions), the employer can lawfully act on a
> level of certainty that might not be enough in a
> court of law. In the workaday world, not every
> personnel decision involving a false statement (or
> a cover-up) has to be treated as something like a
> trial for perjury. Therefore, an employer, in these
> situations, is entitled to rely on its good faith
> belief about falsity, concealment, and so forth.

<u>E.E.O.C. v. Total Sys. Servs., Inc.</u>, 221 F.3d 1171, 1176 (11th

Cir. 2000).

The record reveals that the Sheriff's Office concluded

Peack had violated its untruthfulness policy when (1) she

stated that she was absent from work on June 4 because she

misunderstood that she was on vacation and (2) when she

subsequently provided a doctor's note stating that she was

too ill to report to work on June 5 but still attended the

class in Orlando. Whether the Sheriff's Office's conclusion

was correct is inconsequential. <u>Damon</u>, 196 F.3d at 1363.

Rather, what matters at this stage is that Peack has not

presented any evidence to establish the Sheriff's Office's

proffered reason is pretextual. That is, Peack has failed to

show the reason was not the true reason for her termination.

Cf. <u>Oliver v. TECO Energy, Inc.</u>, No. 8:12-cv-2117-T-33TBM,

2013 WL 6836421, at *10 (M.D. Fla. Dec. 26, 2013)("The record shows that TECO's decision makers were operating under the belief that her absence from the meeting was unauthorized, and Oliver has not pointed to any contrary evidence regarding the decision maker's beliefs.").

Although Peack insists her supervisors lied in their memoranda and declarations to have her employment terminated, Peack has presented no evidence in support of that argument. See Combs, 106 F.3d at 1528 (noting that a plaintiff must provide evidence "sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision").

Peack's evidence that the Florida Department of Economic Opportunity granted her appeal and reversed the denial of her unemployment benefits does not refute the Sheriff's Office's stated non-discriminatory reason — that it fired Peack because of perceived untruthfulness. The appeals referee in that case found that the Sheriff's Office had not carried its burden of proving Peack's misconduct by a preponderance of the evidence, and that Peack's testimony in that proceeding was "more credible." (Doc. # 55 at 5).

But unemployment benefits appeals are different than Title VII discrimination and retaliation cases. That appeal involved a different legal issue — whether the Sheriff's Office had proven misconduct by Peack sufficient to warrant the denial of unemployment benefits — and a different legal standard — a preponderance of the evidence burden placed on the Sheriff's Office. Here, the burden is on Peack to establish a prima facie case of race, national origin, or religious discrimination, which the Sheriff's Office can rebut by producing an alternative reason for Peack's termination.

That the Sheriff's Office did not prove Peack's misconduct by a preponderance of the evidence in a separate legal proceeding is not evidence that its stated reason for Peack's termination was pretextual. At most, this evidence suggests the conclusion by the Sheriff's Office regarding Peack's truthfulness was incorrect. But, again, so long as an action is not motivated by a discriminatory reason, it is not illegal, even if the reason was incorrect. See Smith v. City of Fort Pierce, Fla., 565 F. App'x 774, 779 (11th Cir. 2014)(citing Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984)); Thomas v. Nicholson, 263 F.

App'x 814, 816 (11th Cir. 2008)(citing <u>Damon</u>, 196 F.3d at 1361)).

Additionally, Peack argues that her termination was a breach of her employment contract because "there is clearly a contract namely the General Order Handbook from which an employee must breach a General Order to be justly and without discrimination terminated." (Doc. # 53 at ¶ 3). But this is not a breach of contract case, because Peack listed only Title VII as the grounds for her claim in her Second Amended Complaint. (Doc. # 36 at 1). And, to the extent that terminating an employee in violation of an employer's own policy may be evidence of discrimination, the Sheriff's Office found that Peack had violated the General Order regarding untruthfulness. Thus, even if Peack were correct that the Sheriff's Office could not lawfully fire her unless she violated a General Order, the Sheriff's Office did not violate that termination policy.

**B.   <u>Retaliation Claim</u>**

"To establish a prima facie case of retaliation under Title VII, 'the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.'" <u>Thomas v. Cooper Lighting,</u>

_Inc._, 506 F.3d 1361, 1363 (11th Cir. 2007)(quoting _Meeks v. Comput. Assocs. Int'l_, 15 F.3d 1013, 1021 (11th Cir. 1994)). "[I]n order to constitute protected opposition activity, a plaintiff must, at the very least, communicate her belief that illegal discrimination is occurring." _Marcelin_, 2006 WL 923745, at *9 (citing _Webb v. R & B Holding Co._, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)("It is not enough for the employee merely to complain about a certain policy or certain behavior . . . and rely on the employer to infer that discrimination has occurred.")).

During her deposition, Peack acknowledged that she did not report any complaints of discrimination during her employment with the Sheriff's Office. (Peack Dep. Doc. # 49-5 at 111:8-17; Fulse Decl. Doc. # 49-2 at ¶ 8). In her response, Peack asserts that her failure to file a complaint is not grounds for summary judgment because Peack "did this out of fear of losing my job out of retaliation for filing a complaint." (Doc. # 53 at ¶ 30).

Additionally, Peack contends in her response that she was retaliated against by her supervisors for "requesting a transfer from the jail to positions that were anywhere other than the jail." (Doc. # 53 at ¶ 30). Yet, Peack has not provided any evidence of these transfer requests, and

regardless, Peack's request for a transfer, without more, would not have alerted the Sheriff's Office to alleged discrimination against Peack. See Williams v. H. Lee Moffitt Cancer Ctr. & Research Inst., Inc., No. 8:09-cv-784-T-33TGW, 2010 WL 5058513, at *10 (M.D. Fla. Dec. 6, 2010)("[T]o constitute protected activity, a plaintiff must, at the very least, tell his employer that he believes that illegal discrimination is occurring." (citations omitted)). Indeed, Peack specifies that the motivation for her transfer requests was not discrimination covered by Title VII: "I requested transfer from the jail because it was terribly understaffed and there was no attempt to try to keep people from leaving but instead threats to fire deputies and other employees every morning at briefing in the jail." (Doc. # 53 at ¶ 31).

As Peack acknowledges that she did not engage in protected activity for fear that she would be retaliated against, there is no genuine issue of material fact regarding whether she was terminated in retaliation for engaging in protected activity. Peack's termination could not have been caused by her engagement in protected activity. See Birdyshaw v. Dillard's Inc., 308 F. App'x 431, 436 (11th Cir. 2009)("In this case, it is undisputed that Dillard's suspended Birdyshaw's salary on January 17, 2001, nearly one month

before Birdyshaw filed her first EEOC charge on February 15, 2001. Thus, there could not have been any causal connection between the suspension of Birdyshaw's salary and her subsequent EEOC charge."). The Court grants summary judgment on the retaliation claim because Peack has failed to establish the protected activity and causation elements of her prima facie case.

**IV.** **Conclusion**

The Court grants summary judgment for the Sheriff's Office because Peack has failed to establish a prima facie case of disparate treatment and, even if she had, she failed to show that the Sheriff's Office's proffered reason was pretextual. In addition, Peack failed to establish a prima facie case of retaliation.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Polk County Sheriff's Office's Motion for Summary Judgment (Doc. # 48) is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Defendant Polk County Sheriff's Office and thereafter **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of February, 2017.

32

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE